IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | CRIM. ACT. NO. 24-cr-145 |
| : | |
| **ZHENGCHENG HUANG** : | |
| : | |

**DEFENDANT'S POST-HEARING MEMORANDUM
REGARDING FORFEITURE**

**I.   INTRODUCTION**

The Government seeks forfeiture of approximately 199 bitcoins that, as of today, has the value of approximately $23.9 million.[1] The drug proceeds in this conspiracy, even assuming that Mr. Huang was part of the conspiracy from the very beginning, amounted to roughly $5.4 million.[2] To order forfeiture of property valued at over 23 times the maximum permissible fine under the statute of conviction ($1 million) and over four times the maximum proceeds received during the offense of conviction would violate the Excessive Fines Clause of the Eighth Amendment.

**II.   FORFEITURE OF ALL 199 BITCOINS VIOLATES THE EXCESSIVE FINES CLAUSE**

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII. In *United States v. Bajakajian*, the Supreme Court held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." 524 U.S. 321, 334 (1998). The touchstone of the constitutional inquiry

---

[1] As of October 2, 2025, according to coinbase.com, one bitcoin is valued at $120,258.31.

under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. *Id.* at 334. The Court established a two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment. First, the Court must determine if the Excessive Fines Clause applies at all. *Id.* at 334. If it does, then the second step and determine whether the challenged forfeiture is unconstitutionally excessive. *Id.*

### A.     The Excessive Fines Clause applies as the forfeiture sought here is punitive.

The Government argues that the Excessive Fines Clause does not apply to criminal proceeds. Govt Supp Memo at 5.[3] The Government's position is incorrect under *Bajakajian*. The *Bajakajian* Court held that the Excessive Fines Clause applies to those forfeitures that may be characterized, at least in part, as "punitive."—i.e., forfeitures for which a defendant is personally liable. *Id.* at 327-28. The Court concluded that the forfeiture in *Bajakajian* constituted punishment because the forfeiture statute directed the court to order forfeiture as an additional sanction when "imposing sentence on a person convicted of" the underlying offense. Thus, forfeiture is "imposed at the culmination of a criminal proceeding and requires conviction of an underlying felony, and it cannot be imposed upon an innocent owner." *Id.* at 328.

Like the statute in question in *Bajakajian*, the forfeiture statute here, 21 U.S.C. § 853, applies to "[a]ny person conviction of a violation of this subchapter" and is applied by "[t]he court, in imposing sentence on such a person." *See* 21 U.S.C. § 853(a). Like the statute in *Bajakajian*, the statute here also has a third party "innocent owner" defense. *See* 21 U.S.C. §

---

[2] As set forth later in this brief, Mr. Huang does not concede that he was part of the conspiracy starting in 2018. Rather, he joined the conspiracy described in the indictment in 2021.
[3] The Government appears to affirmatively waive the argument that the Bitcoins were "facilitating" property. Gov't Supp. Memo. at 12.

853(n)(6). Thus, under *Bajakajian*, criminal forfeiture under 21 U.S.C. § 853 is punitive and is subject to the Excessive Fines Clause. *See United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016) (describing as "punitive" those forfeitures "imposed at the culmination of a criminal proceeding that required a conviction of the underlying felony and could not have been imposed upon an innocent party").

"Punitive" forfeitures can be contrasted with purely "remedial" forfeitures – those meant to compensate the Government for a loss. *Bajakajian*, 524 U.S. at 329. Purely remedial forfeitures *may* fall outside the scope of the Excessive Fines Clause. *Id.* However, if *any* purpose of the forfeiture is punitive, then the Excessive Fines Clause still applies. *Id.* at 329 n.4 (citing *Austin v. United States*, 509 U.S. 602, 621-22 (1993)). *See also Paroline v. United States*, 572 U.S. 434, 456 (2014) ("The primary goal of restitution is remedial or compensatory, but it also serves punitive purposes. That may be sufficient to bring it within the purview of the Excessive Fines Clause." (internal quotation marks, citations, and alteration omitted)). The forfeiture sought in Mr. Huang's case is in no way tied to restitution or loss compensation and thus should be considered punitive and subject to the Excessive Fines Clause.

The Government relies on *United States v. Various Computers and Computer Equipment*, 82 F.3d 582 (3d Cir. 1996), a civil forfeiture case, to argue that the Excessive Fines Clause does not apply to the forfeiture of criminal proceeds as the forfeiture of criminal proceeds is never punitive. Gov't Supp. Memo. at 6-7, 13. However, in *Bajakajian*, the Court distinguished traditional civil *in rem* forfeiture, like that in *Various Computers*, from criminal *in personem* forfeiture, like Mr. Huang's case. 524 U.S. at 330-332. Criminal *in personem* forfeitures have historically been treated as punitive. *Id.* Thus, the reasoning of *Various Computers*, a civil *in rem* forfeiture case, is not applicable here. *See United States v. Jalaram, Inc.*, 599 F.3d 347, 352 (4th

3

Cir. 2010) (finding that "forfeiture of criminal proceeds does indeed constitute punishment to which the Excessive Fines Clause applies"); *id.* at 353 (noting that the Supreme Court has previously rejected the Government's effort to shield all proceeds forfeitures from proportionality review) (citing *Alexander v. United States*, 509 U.S. 544, 558-59 (1993)). Under *Bajakajian*, all criminal *in personem* forfeitures are punitive and subject to the Excessive Fines Clause. Thus, the Excessive Fines Clause applies here.

**B.    The forfeiture of all 199 bitcoins would be grossly disproportionate.**

In assessing the proportionality of a fine, or forfeiture order, the Court considers (1) the nature of the offense or offenses; (2) whether the defendant falls into the class of persons for whom the statute was designed—e.g., money launderers, drug dealers, or tax evaders; (3) the maximum fine authorized by statute and the sentencing guidelines which are associated with the offense or offenses; and (4) the harm caused by the defendant's conduct. *United States v. Young*, 618 Fed. Appx 96, 97 (3d Cir. 2015) (citing *United States v. Cheeseman*, 600 F.3d 270, 283-84 (3d Cir.2010)).

Regarding the first two factors, it is undisputed that this particular forfeiture statute targets drug traffickers and that Mr. Huang was part of a drug trafficking conspiracy. Certainly, some amount of forfeiture is appropriate and Mr. Huang does not contest that a portion of the 199 bitcoins (or a money judgment that equivalent to the value of a portion of the 199 bitcoins) is appropriate. However, the entire amount would not be appropriate given the third factor, to be discussed below.

With regard to the fourth factor, the harm caused by Mr. Huang's conduct, while this was an undeniably serious offense, it was also a completely non-violent offense. There were no firearms involved, no competition for territory, and no threats issued towards anyone. In other

words, the violence that many other drug trafficking conspiracies entail was not present in this case. Additionally, the danger that is associated with fake drugs and fentanyl overdoses was not present in this case as the drugs trafficked consisted of diverted pills manufactured by pharmaceutical companies, not fake pills. Again, this factor supports some amount of forfeiture, but not the entirety of the 199 bitcoins at issue here, especially in light of the third factor.

   The third factor considers the maximum fine authorized by the sentencing guidelines and the statute. The *Bajakajian* Court noted that "[r]eviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Bajakajian*, 524 U.S. at 336 (internal quotations and citations omitted). In Mr. Huang's case, the fine range under the Sentencing Guidelines is $500,000 to $1,000,000. PSR ¶ 72. The statutory maximum penalty for a conviction under 21 U.S.C. §§ 846 & 841(a)(1), (b)(1)(C) is $1,000,000. 21 U.S.C. § 841(b)(1)(C). The Government seeks forfeiture of an amount of bitcoin that is worth over 23 times the maximum permissible fine amount. No matter how one tries to justify it, that is grossly disproportionate to the maximum possible penalty permissible by statute for Mr. Huang's offense of conviction. In *Cheeseman*, the Court determined that forfeiture of firearms valued at $500,000 did not violated the Excessive Fines Clause even though that value was twice the statutory maximum fine of $250,000. Similarly, here, defense agrees that a forfeiture of property or a money judgment that is possibly twice the value of the statutory maximum fine amount of $1 million would not be grossly disproportionate. But there is no question that the forfeiture of property or money judgment in the value of 23 times the statutory maximum fine amount would violate the Excessive Fines Clause.

III. **THE 199 BITCOINS DO NOT CONSTITUTE PROCEEDS OF THE OFFENSE OF CONVICTIONS**

In forfeiture proceedings under 21 U.S.C. § 853, "proceeds" refers to gross receipts, and not profits. *United States v. Heilman*, 377 Fed. Appx. 157, 211 (3d Cir. 2010). In Mr. Huang's case, the most appropriate manner to determine gross receipts is to extrapolate that number from the amount of oxycodone sold and the price of the oxycodone. The government's proposed "tracing" method fails to show proceeds by a preponderance because they are unable to actually trace all this bitcoins at issue here to drug trafficking activity.

    A.    **The most accurate way to calculate proceeds is to extrapolate it from the quantity of drugs sold and the price that they were sold for.**

The Government's evidence in this case shows that all the drugs sold by Chinodrug were shipped through a particular shipping company's stamps.com account, which showed packages being shipped from 2018 to 2024 from Washington State to various customers throughout the United States. Tpt 9/16/25 at 15-16; PSR ¶ 11. Based on the shipping records and interviews with customers, the Government has calculated and put forth a drug quantity calculation that the conspiracy as a whole was responsible for from 2018 to 2024: a total of 15,487 shipments, with each shipment consisting of 70 pills of Percocet 5 mg (containing 5 milligrams of Oxycodone). Tpt 9/16/25 at 73, Ex. D-1; ECF Doc. 38, Ex. A. Witness interviews indicate that the pills were sold at $1 per milligram of Oxycodone. Tpt 9/16/25 at 77. With this information, basic math shows that the conspiracy, had gross receipts in the amount of $5,430,950 from 2018 to 2024. ECF Doc. 38 at 3. This amount assumes that every single package shipped contained Oxycodones, even though the evidence showed Chinodrug sold other substances as well including Sevoflurane and Dexmedetomidine, which are both prescription only anesthetics but are not on the controlled substances schedules. Tpt 9/16/25 at 75-76.

Mr. Huang submits that the amount of proceeds as part of this conspiracy is actually less than $5.4 million because he did not participate in the Chinodrug conspiracy, specifically the internet/mail sales, until he purchased the Chinodrug identity in approximately 2021. While he may have made small face-to-face, in-person sales of pills prior to his purchasing of the identity, he did not get receipts from Chinodrug sales until he purchase the identity from the prior operator. Tpt 9/16/25 at 79-82. Mr. Huang has consistently asserted since the time of his arrest, including at the change of plea hearing before this Court, that he did not become involved in this particular Chinodrug conspiracy until he purchased the identity in roughly 2021. The Government is unable to prove by a preponderance otherwise. Mr. Huang's street sales beforehand were not part of this Chinodrug conspiracy. Counting only the shipments from the middle of 2021 through 2024, Mr. Huang would only have received $1,720.950 in gross receipts.[4] ECF Doc. 38 at 4. Mr. Huang respectfully submits that the proper forfeiture amount in this case is $1,720,950 or its equivalent value in bitcoins.

    **B.**    **The Government fails to meet the requirements for the rebuttable presumption under 21 U.S.C. § 853(d).**

The Government argues that the rebuttable presumption under 21 U.S.C. § 853(d) applies and that all 199 bitcoins are subject to forfeiture. Gov't Supp. Memo. at 9. However, the Government has failed to prove by a preponderance that the Mr. Huang acquired all the bitcoin during his involvement in this offense and they have failed to prove by a preponderance that there was no other likely source for the property other than the offense conduct. In the alternative, the presumption has been rebutted.

---

[4] Under *Honeycutt v. United States*, 581 U.S. 443 (2017), Mr. Huang cannot be ordered to forfeit proceeds that were acquired by other co-conspirators and which he himself never received.

First, the Government has produced no evidence that Mr. Huang was personally involved in Chinodrug and obtaining proceeds from it since 2018. While the Indictment charged that the conspiracy started in 2018, no evidence was produced indicating that Mr. Huang conspired with Chinodrug to see drugs via the internet starting in 2018. During his change of plea hearing, the defense clearly stated that Mr. Huang, while pleading guilty to the elements of the offense, did not agree that he was part of the conspiracy as of 2018. To the contrary, Mr. Huang has consistently stated, as verified by the case agent, that he only became Chinodrug in approximately 2021 and the Government has provided no evidence otherwise. Thus, any bitcoins obtained prior to approximately 2021 would not be subjected to this rebuttable presumption.

Additionally, the Government has failed to prove that there was no other likely source for the bitcoins. Mr. Huang had a job from 2019 to 2024. PSR ¶ 56. He also owned and ran an exportation business, registered in California as Imagine Tech., since 2010. Mr. Huang purchased items such as designer bags, makeup, and iPhones and resold them to a third party. He was able to find deals and discounted items, purchase them, and sell them at a mark-up overseas. PSR ¶ 12. Ms. Zheng Ling, Mr. Huang's aunt, also provided Mr. Huang with funds over the years for the purpose of investing in cryptocurrency. Tpt 9/16/25 at 4; ECF Doc. 45. Thus, the government has failed to prove by a preponderance that there was no likely source for all 199 bitcoins other than the offense of conviction.

    **C.**    **The Government's tracing does not establish that the 199 bitcoins were proceeds from this offense.**

The Government was unable to trace all 199 bitcoins in the Trezor device to the offense of conviction. The case agent testified that he traced fewer than 13.2 bitcoins to specific customers. Tpt 9/16/25 at 62-64 (testifying that he did not trace every transaction to a customer

who information matched records from the shipping company). He was unable to say how many of the 199 bitcoins in the Trezor wallet actually came from people who he had matched to the shipping records in the case. Tpt 9/16/25 at 96. Only a small percentage of the bitcoin in the HTX account that partially funded the Trezor wallet could be traced to the Darknet market. *See* G-3 & G-4 (Charts of indirect and direct source of bitcoin sent to the HTX account showing 3.55 and .95 bitcoin, respectively, coming from the Darknet market). The case agent was unable to state how many of the 199 bitcoins in the Trezor wallet actually came from a Darknet market. Tpt 9/16/25 at 95-96.

The case agent also acknowledged that Coinbase and CashApp were used for legitimate as well as illegitimate transactions and bitcoin is not inherently illegal. Tpt 9/16/25 at 29-31, 78. Additionally, the case agent admitted that illegal, but non-drug related, transactions could occur via Coinbase and CashApp as well. Thus, it cannot be assumed that any transaction that passed through Coinbase or CashApp or other similar virtual currency exchanges were for oxycodone sales.

Ultimately, the Government only traced a small percentage of the 199 bitcoins to either an actual Chinodrug customer or the Darknet market.

Mr. Huang concedes that a portion of the 199 bitcoins represent proceeds from his offense of conviction. However, as he has consistently maintained in his statements to law enforcement, these bitcoins represented commingled funds, some of which was drug proceeds and some of which was investments in cryptocurrency from friends and family. Tpt 9/16 25 at 81. As commingled funds, the Court should order a money judgment in the amount of what Mr. Huang received, based on the drug quantity and price. *See supra* § III.A; 21 U.S.C. § 853(p)(1)(E). It is important to note, Mr. Huang was convicted only of conspiracy to commit

drug trafficking in violation of 21 U.S.C. § 846. He was not convicted of money laundering. Unlike 18 U.S.C. § 982, forfeiture under 21 U.S.C. § 853 does not reach licit funds that were commingled with illicit funds.

### IV.  THE BITCOIN SHOULD BE TREATED AS CURRENCY RATHER THAN UNIQUE PROPERTY

The government appears to argue that the 199 bitcoin in this case is the equivalent of specific property, like a boat or house, which should be forfeited because it represented drug proceeds. The Court should instead treat the Trezor wallet like a bank account holding commingled funds. *See United States v. Harmon*, 474 F.Supp.3d 76, 88-90 (D.C. 2020) (characterizing bitcoin as currency and money). In such cases, the Court should order the forfeiture of substitute property, such as a money order, that is the equivalent of the monetary value of the proceeds from the offense. 21 U.S.C. § 853(p)(1)(E).

If the Court wishes to order forfeiture in the form of bitcoin and wishes to account for the fact that bitcoins have increased in value, the Court could order forfeiture of the proceeds in bitcoins (rather than a money judgment), but use the value of bitcoins as of the time of Mr. Huang's arrest on April 23, 2024 (PSR ¶ 10). On April 23, 2024, the closing value of a single bitcoin was $66,407.27.[5] Assuming Mr. Huang sold oxycodone from 2018 to 2024, $5,430,950.00 in proceeds would be the equivalent of 81.7824615 bitcoins.[6] Assuming Mr. Huang sold oxycodone from mid-2021 to 2024, $1,720,950.00 in proceeds would be the equivalent of 25.9150843 bitcoins.[7]

---

[5] See https://coinmarketcap.com/currencies/bitcoin/historical-data/ (last visited August 17, 2025).
[6] As of October 3, 2025, this would be the equivalent of roughly $9.6 million.
[7] As of October 3, 2025, this would be equivalent of roughly $3.16 million.

## V.    CONCLUSION

For the reasons set forth above, as well as in the defendant's prior filings and at the hearing, the defendant respectfully requests that the Court reject the Government's request for forfeiture of all 199 bitcoins in the electronic wallet seized. Instead, the Court should enter a judgment of forfeiture based on the proceeds as measured by the number of shipments or pills sold in this case.

                                                                 Respectfully submitted,

DATE: October 3, 2025

                                                          */s/ Susan M. Lin*
                                                          Susan M. Lin
                                                          KAIRYS, RUDOVSKY, MESSING,
                                                          FEINBERG & LIN
                                                          The Cast Iron Building
                                                          718 Arch Street, Suite 501 South
                                                          Philadelphia, PA  19106
                                                          (215) 925-4400
                                                          (215) 925-5365 (fax)

                                                          *Counsel for Zhengcheng Huang*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2025, the foregoing Defendant's Post-hearing Memorandum Regarding Forfeiture was filed via the Court's CM/ECF system, is available for viewing and downloading, and, as such, was served upon the below counsel:

>Jason Grenell, Esq.
>Assistant U.S. Attorney
>Jason.Grenell@usdog.gov

>/s/ *Susan M. Lin*
>Susan M. Lin